Good morning everyone. Judge Callahan and I are thrilled to have sitting with us today Judge Lassnick from the Western District of Washington. Welcome and thank you Judge Lassnick. Thank you so much. It's a great honor to be here. The cases will be called in the order listed on the docket. The first case on calendar for argument is Ortiz v. Barr. Counsel for petitioner please approach and proceed. Good morning. Good morning. Thank you Your Honor. May it please the court. Elizabeth Moulton for petitioner Victor Ortiz. I'd like to reserve two minutes for rebuttal. All right. Counsel please be advised that the time showing is your total remaining time. Thank you. All right. So I'd like to start by making clear what relief we're asking for on appeal. We're asking the court to remand the case to the board so that Mr. Ortiz has a chance to present his case with competent counsel. Two things happened below that denied Mr. Ortiz that chance so far. First his lawyer before the I.J., Ms. Lyle Herrera was unconstitutionally inadequate and her deficient performance before the I.J. prejudiced his case. Well the case had been going on like about four years, right? At the time of the hearing. Yes. So even if we accept that she was inept, I guess she said she was surprised the hearing was going to actually go forward on the day that it did. How was Mr. Ortiz prejudiced by his counsel's failure to prepare him? He was allowed to explain his situation in his own words. And, you know, it's, competent counsel is not charged with making sure that people don't tell any inconsistencies and any lies. You know, hopefully if you refresh their memory, but by the same token, if your story doesn't hang together, competent counsel can't help you on that. So there's two things, Your Honor, that Ms. Lyle Herrera did that directly led to the adverse credibility finding. And both of those are attributable to her and not to Mr. Ortiz. So the one thing that happened is the IJ identified an inconsistency between Mr. Ortiz's asylum declaration and his testimony, adding the bus station incident. The reason that that wasn't in the declaration is because Ms. Lyle Herrera didn't work with him to prepare the declaration and then didn't review the declaration until the IJ ordered her into the hallway to discuss it with Mr. Ortiz before he swore that it was true and correct. Now, the government says he swore that it was complete. That's not the case. He swore it was true and correct, and then the judge asked him, do you have anything to add or take away? He said no, but he didn't understand that that needed to be his complete story because Ms. Lyle Herrera, who's his lawyer and supposed to be helping him, put the relevant information into the declaration and frame up his claims in terms of the legal requirements. But he was all over the place about the dates. I mean, he just couldn't get that right. I disagree with that, Your Honor. When you look at the transcript, he actually only misspoke about one date, about whether the funeral home incident happened in 2001 or 2008. The first time that he mentioned it, he does say 2008, but then he corrects himself on the record three times and says it's 2001, it's the date I said in the declaration, I was unsure because so much time had passed, and it's actually Ms. Lyle Herrera who introduces the confusion about whether the funeral home or the bus station incident happened first, not Mr. Ortiz, and then she continues to refer to the funeral home incident as occurring in 2008, even after Mr. Ortiz tried to correct the record. Well, do you have to show prejudice? We need to show that her representation prejudiced his case, yes. I guess another issue that would be helpful for you to address for me is what's your best authority for the proposition that residency in a neighborhood such as Colonial Matsumo may constitute a particular social group, as the term is used in 8 U.S.C. Section 1110A.42, and then I just didn't see anything in the record that showed that there was any, that you established any nexus, so I'm having a difficult time finding that even if it was, if assuming she was deficient, you still have to be able to show that you, that there's something, where's the there there? You're right, Your Honor. We need to show that he has a plausible claim for relief, and the evidence in his declaration that his neighborhood of origin is Colonial Matsumo, and that certain gangs target people from that neighborhood is enough to establish a plausible particular social group and nexus, and I'll just note this is something the government hasn't disputed. But how is that enough if certain people are targeted and he's not one of those certain people? What's the nexus with his particular claim? He says in his declaration that he is targeted because he's from Colonial Montesano, and Your Honor used the word clan, which is exactly the analogous case law that would relate to his particular social group. So cases like Mohammed v. Gonzalez and Ali v. Ashcroft say that someone who's a member of a particular clan, that that can be a social group, and this neighborhood of origin theory is analogous to that line of cases. It fits within the three requirements of the Board's decision in matter of MEVG, and Mr. Ortiz should be given the chance to present that theory with competent counsel on a fully developed record before the IJ, and the Board and the Immigration Court should be the first person to address whether that is a plausible theory. Do you have a case that says that coming from a particular neighborhood can constitute a particular social group? We don't have a case that's directly about neighborhoods. The most analogous cases, I think, are the clan cases. So if we disagree with you about whether or not those cases support the notion that coming from a neighborhood is a particular social group, do you lose? I don't think that that's an issue the court should reach right now. But if we do reach it, and if we disagree with you, do you lose? We would lose on the asylum and withholding claims, but he would still have the CAT claim, which doesn't require a particular social group. So what's the plausible claim for relief on the CAT claim? That the government is unable to control the gangs and prevent gangs from torturing them. What's the torture? What's the likelihood, the plausible claim of likelihood of torture? So in his declaration, he explains how he's targeted by gangs, including being extorted for money, that he was kidnapped by gang members and taken into the woods, that he was held at gunpoint at the funeral home. And those are past instances, and then he says he fears future instances like that or worse. And he talks about how people from his neighborhood continue to be targeted by gangs, for example, his cousin. And so... What's your closest case that says those events rise to the level of torture as opposed to persecution? Well, death threats and kidnapping, I think, would amount to torture. What's your closest case authority that had similar facts that rose to the level of torture? So in Madrigal, which is a case about a former military officer from Mexico, he was kidnapped, threatened, and the court found that that could amount to torture, and then explained that based on corruption in the police, that that showed there was the government's inability to control and prevent the persecution. And I'll just remind the court that the government hasn't disputed that he has a plausible case on the merits, and all we're asking for is a chance for Mr. Ortiz to present that case with competent counsel. So, I want to explain that both Ms. Weill-Herrera's representation impacted both the credibility of his own declaration and his testimony, because she asked confusing and contradictory questions that thwarted his ability to tell his own story in a consistent manner. And she also prejudiced the merits of his claims by failing to develop these legal arguments and submit evidence that would put his case into the framework for relief on withholding asylum or cap. If there are no further questions, I'll reserve the rest of my time. All right. Thank you, counsel.  May it please the court. My name is Evan Schultz. I represent the government. Good morning. Good morning. I'd like to just pick up on a couple of points that came up in the opening part of the argument just now. I think that Judge Callahan is correct that when you're talking about truthfulness and credibility, that this is not something that comes from the mouth of the lawyer. This comes from the mouth of the petitioner. This was his own story. He knew what was correct and what wasn't correct, and this court has recognized that in the Soto v. Holder case, where it said that when it comes to truthfulness, this is not something that lawyers can fix. If you look at the Roja Garcia case, this court said that for some problems, that they're so bad that all the king's horses and the best counsel in the world can't fix them. That was precisely the case with this testimony, given I missed it. Counsel, opposing counsel points out that there was only confusion about one date. Do you agree with that? That's not true, Your Honor. I do not agree with that. If you look at Mr. Ortiz's written statement, he says that the entirety of the situation took place in 2001. If you look at his oral testimony, he mentioned at least three dates when it comes to what happened with the gangs. He talks about 2001, 2005, 2008. It's also something that I would disagree with about the contents. It's not simply a question of dates, it's a question of number of incidents. The written report talks about one incident. The testimony talks about two. We also have to keep in mind that under this court's Shrestha precedent, we have to look at the totality of the circumstances. These are not trivialities. Well, would you say, though, that, I mean, you know, obviously, if a lawyer comes to court and then goes, oh, I didn't know it was the trial today, that doesn't inspire a whole lot of confidence here. It had been four years that they had been on the case, but would you say that does the record compel a conclusion that the initial attorney was ineffective, but this comes down to the prejudice prong, or what's your position? Your Honor, it's correct that this case does come down to prejudice. The board simply didn't address the incompetency prong. I think it's probably most fair to say that the court assumed but did not decide the question of incompetency. The only issue on ineffective assistance that the court dealt with was prejudice, and therefore, that's the only issue before the court. Well, there was a record on this particular attorney. Yes, Your Honor. So I think it would be fair to assume incompetency, especially if the attorney comes to the proceeding and is not even aware that there is going to be a hearing and totally failed to prepare her client to testify. So let's go from the presumption that there was ineffective assistance of counsel. I think that's what the board did, Your Honor. I agree. Let us do the same. Right. And that leaves us with prejudice. And again, if you look at the court's decision in Soto v. Holder, if you look at the language from the court in Rojas Garcia, this isn't the sort of problem that a lawyer can fix. It's also simply a question of, again... Well, but we always look, when we look to prejudice, if there's something in the record because then there's another lawyer that... This is actually the pro bono lawyer is actually the third lawyer that this person testified. There's actually four lawyers, at least five actually, that have been involved in this case. There's a lawyer in Arizona for a short amount of time, and then the lawyer who's claimed to be inadequate, and then there's a lawyer whose name is Rayden Concio, who wrote the two-and-a-half-page brief to the board. Then there's current counsel here, and I think that there's another lawyer that's been brought on since then as well. Well, so I guess my point is, you know, I mean, when we look to prejudice, we look through everything and we say, well, if things had been done correctly, if there hadn't been incompetence of counsel, does the person have a claim? Is there any way that they could win? What is there in this record? I think we discussed with the petitioner about nexus, about social group, about all... What in this record? I think she said you conceded she has a possible claim. And that's actually not correct, Your Honor. If you look at what the immigration judge said, if you look at what the board said, and if you look at our brief, we actually say that because of the general crime that claimed particular social groups from that. This court wrote in Zatino that general crime and civil unrest simply is not enough to create a nexus to one of the protected grounds. That's what the immigration court addressed, the board addressed, and we absolutely did talk about that in our brief, Your Honor. What about the particular social group of the neighborhood? As Your Honor pointed out, there's simply nothing about that in the record. In fact, if you look at his testimony, I'm sorry, if you look at the evidence they submitted, the State Department report talks about high crime in the country generally. He does say also that everywhere he looked, there was crime. He didn't limit... There was crime from gangs. He didn't say that was limited to his neighborhood. So even if you do skip beyond everything else on the asylum and withholding, the general crime simply means that there's no nexus. And if you were to talk about CAT, and again, as our brief says, I'm not sure those issues are properly before the court, they waive that. In pages 50 through 55 of their brief, they didn't talk about these additional issues. But if you did take a look at that... What additional issues? If you look at the question of essentially the other areas that the board talked about in its brief beyond credibility, if you look at pages 50 through 55 of their brief, all they talk about is credibility. So what issues are you contending have been waived? As we say in our brief, the CAT claim and anything dealing with the PSG. But then we also say in the alternative, if you were to reach the merits on the PSG claim and withholding, as we just said, the general crime would stop that. I apologize, Your Honor. That's one of the risks of being a repeat player with immigration law. With particular social groups and with the convention against torture... I'm sorry, now I've stumbled over myself. For the particular social group, I've discussed that. I'd also like to say for the convention against torture, the credibility issue would still, of course, be a problem for that. But I'd also point out that looking at the testimony that he gave, he spent between one and maybe seven years, depending on which date you credit, he spent between one and seven years in his country without any additional harms from the gang, including any sort of torture. He said that at one point, the entirety of the situation took place in 2001. At another point, he said he had his last gang contact in 2008. He came to this country in 2009. That means there's a gap there. And that would basically be strong evidence that he's not going to be tortured because while he was there, nothing happened to him that he testified about. Well, Mr. Ortiz asserts that he's entitled to a remand because the IJ failed to give him notice of the need for specific corroborative evidence. What's your response to this argument? I think the best response is that the board did not adopt that part of the decision. This court here looks at what the board did. The board did not talk about corroboration. And at another point in, I think, their reply, maybe in their main brief, the other opposing counsel indicated that corroboration and adverse credibility were one and the same. That's simply not true. If you look at the statute, section 1158B1, under that, and subpart B2 is where it talks about one of the issues, and subpart B3, it talks about the other. Even if you look at the statute, they're separate. If you look at the Wren case that they also talk about, it treats corroboration and credibility separately. So I'd say that's a bit of a red herring. It's simply not something before this court right now. Unless this court has any other questions, the government's happy to rest. It appears not. Thank you. Thank you, Your Honors. Thank you. Counsel, before your time starts, would you please address the waiver issue? Yes. If you look at pages 28 and 29 of the government's brief, this is where they talk about whether Mr. Ortiz has properly preserved the past and future persecution, particular social group, and nexus arguments. And their only point is that the court, they say the court doesn't have jurisdiction over those arguments. But where in your brief did you address the torture claim and particular social group claim, especially the neighborhood portion of it? Where in your brief did you discuss that? So we discussed that, let me see where we cited MEDV, pages 44 and 45 of the opening brief. Okay. So on the government's waiver point, just briefly, they say that the court doesn't have jurisdiction because we didn't appeal this to the board. If you look at what, so the government agrees that we've preserved the credibility determination, and they cite Mr. Ortiz's brief to the board at CIR 11. And in that sentence, Mr. Ortiz preserves both the credibility argument and the merits argument. So there's no way for the government to say half of that sentence preserves the credibility argument, but the second half of the sentence doesn't preserve the merits arguments. So I just want to make two points about opposing counsel's argument. First, this truthfulness argument. There's no evidence that Mr. Ortiz was untruthful or lying. He was simply confused. Well, you're under the Real ID Act though, right? That's right. All right. So there are inconsistencies. There are inconsistencies. And inconsistencies, if they're important, can be support and adverse credibility. So we're, but we're challenging whether Ms. Weill-Herrera's representation caused those credibility problems and caused the inconsistencies. So if you look at his asylum declaration, do you mind if I finish? Go ahead. Thank you. If you look at his asylum declaration at page 381, he refers to in the first sentence of that declaration that he was targeted, had many incidences with the gangs. And then he says it all started in 2001 with a funeral home incident. So combining those things, he mentions in the declaration there's more than one problem. He talks about just one. And the reason that his declaration is incomplete is because Ms. Weill-Herrera didn't review it with him and then failed to make sure that it included his entire story. Counsel, I wanted to ask you a question about Madrigal, because that is the case that you said is closest to the circumstances in your case regarding torture. And in that case, we concluded that if the BIA determines that the petitioner is more likely than not to be murdered, that could constitute torture. Is your case close to that? I think it is close in the sense that once the full record is developed and he is able to put in evidence about both the corruption within the police department and the inability of the police to control the gangs, combined with his evidence that people specifically from his neighborhood are targeted by rival gangs, that that could amount to at least a 50 percent chance that he would be tortured. And that is something that he should be able to fully develop with competent counsel for the first time. All right, counsel. On behalf of the court, we thank you for accepting this case pro bono. You did a great job in arguing it. And we appreciate your efforts. Thank you so much. Thank you very much. Thank you both for your arguments. The case just argued is submitted for decision by the court.
judges: Rawlinson, Callahan, Lasnik